[No. S087319. July 9, 2001.]

FOXGATE HOMEOWNERS' ASSOCIATION, INC., Plaintiff and
Respondent, v.
BRAMALEA CALIFORNIA, INC., et al., Defendants and Appellants;
IVAN K. STEVENSON, Objector and Appellant.

**COUNSEL**

Law Offices of Ivan K. Stevenson, Ivan K. Stevenson, Jeffrey L. Boyle; Horvitz & Levy, Barry R. Levy and Jon B. Eisenberg for Defendants and Appellants and for Objector and Appellant.

Robie & Matthai, Pamela E. Dunn and Daniel J. Koes for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Appellants.

Steiner & Libo, Leonard Steiner and James T. Perez for Plaintiff and Respondent.

Nancy E. Spero; Greines, Martin, Stein & Richland and Marc J. Poster for Beverly Hills Bar Association as Amicus Curiae.

Greines, Martin, Stein & Richland and Robin Meadow for Los Angeles County Bar Association and Dispute Resolution Services, Inc., as Amici Curiae.

James R. Madison for California Dispute Resolution Council as Amicus Curiae.

Joel Zebrack for Ron Kelly, Mediator, as Amicus Curiae.

## OPINION

**BAXTER, J.**—The questions we address here are independent of the issues in the underlying lawsuit. Instead, we face the intersection between court-ordered mediation, the confidentiality of which is mandated by law (Evid. Code, §§ 703.5, 1115-1128),[1] and the power of a court to control proceedings before it and other persons "in any manner connected with a judicial proceeding before it" (Code Civ. Proc., § 128, subd. (a)(5)), by imposing sanctions on a party or the party's attorney for statements or conduct during mediation. (See Code Civ. Proc., §§ 128.5, 1209; Bus. & Prof. Code, § 6103.)

The Court of Appeal held that, notwithstanding section 1119, which governs confidentiality of communications during mediation, and section 1121, which limits the content of mediators' reports, the mediator may report to the court a party's failure to comply with an order of the mediator and to participate in good faith in the mediation process. In doing so, the mediator may reveal information necessary to place sanctionable conduct in context, including communications made during mediation. The court concluded, however, that in this case the report included more information than necessary. It therefore reversed a trial court order imposing sanctions on

---

[1] All statutory references are to the Evidence Code unless otherwise specified.

defendants and defendants' attorney. We granted review to consider whether sections 1119 and 1121 are subject to any exceptions.

We conclude that there are no exceptions to the confidentiality of mediation communications or to the statutory limits on the content of mediator's reports. Neither a mediator nor a party may reveal communications made during mediation. The judicially created exception fashioned by the Court of Appeal is inconsistent with the language and the legislative intent underlying sections 1119 and 1121. We also conclude that, while a party may do so, a mediator may not report to the court about the conduct of participants in a mediation session. We nonetheless affirm the judgment of the Court of Appeal, as that judgment sets aside the order imposing sanctions.

I

*Background*

The underlying litigation is a construction defects action in which the defendants are the developers Bramalea, Ltd. (now Bramalea, Inc.), a Canadian corporation, and its subsidiary Bramalea California, Inc., a California corporation (collectively Bramalea), and various subcontractors. The plaintiff is a homeowners association made up of the owners of a 65-unit Culver City condominium complex developed and constructed by defendants. In a comprehensive January 22, 1997 case management order (CMO), made pursuant to Code of Civil Procedure section 638 et seq.,[2] the superior court appointed Judge Peter Smith, a retired judge, as a special master to act as both mediator and special master for ruling on discovery motions. Judge Smith was given the power to preside over mediation conferences and to make orders governing attendance of the parties and their representatives at those sessions. The CMO specifically provided that Judge Smith was to "set such . . . meetings as [he] deems appropriate to discuss the status of the action, the nature and extent of defects and deficiencies claimed by Plaintiffs, and to schedule future meetings, including a premediation meeting of

---

[2]Code of Civil Procedure section 638 now provides in part: "A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes or in the docket, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties:

"(a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision thereon.

"(b) To ascertain a fact necessary to enable the court to determine an action or proceeding."

Code of Civil Procedure section 639, subdivision (a)(5) permits the court, without agreement of the parties, "to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon."

all experts to discuss repair methodology and the mediation . . . ." Defendants were ordered to serve experts' reports on all parties prior to the first scheduled mediation session. The order confirmed that privileges applicable to mediation and settlement communications applied.[3] The parties were ordered to make their best efforts to cooperate in the mediation process.

Bramalea, Ltd. was (and continues to be) represented by Ivan K. Stevenson, who also acted as cocounsel for Bramalea California, Inc. The record reflects that, on the morning of September 16, 1997, the first day of a five-day round of mediation sessions of which the parties had been notified and to which the court's notice said they should bring their experts and claims representatives, plaintiff's attorney and nine experts appeared for the session. Stevenson was late and brought no defense experts. Subsequent mediation sessions were cancelled after that morning session because the mediator concluded they could not proceed without defense experts.

Plaintiff filed its first motion under Code of Civil Procedure section 128.5, for the imposition of sanctions of $24,744.55 on Bramalea and Stevenson (Bramalea/Stevenson) for their failure to cooperate in mediation. The sanctions sought reflected the cost to plaintiff of counsel's preparation for the sessions, the charges of plaintiff's nine experts for preparation and appearance at the mediation session, and the payment to the mediator, which was no longer refundable. Plaintiff's memorandum of points and authorities and declaration of counsel in support of the motion for sanctions recited a series of actions by Bramalea and Stevenson that, plaintiff asserted, reflected a pattern of tactics pursued in bad faith and solely intended to cause unnecessary delay. The actions described included objections to the schedule and attempts to postpone the mediation sessions, and culminated with Stevenson's appearance without experts at the mediation session at which architectural and plumbing issues were to be discussed. The motion recited that when asked by plaintiff's counsel if he would have expert consultants present for the future mediation sessions, Stevenson replied that "I can't answer that." When asked why he had arrived without expert consultants, Stevenson replied: "This is your mediation, you can handle it any way you want. I'm here, you can talk to me." In an ensuing conversation Stevenson said that regardless of settlement between plaintiff and the subcontractors, who had not appeared in the case, Bramalea would not allow the subcontractors to get out of the case and, in a cross-complaint, sought indemnity from them.

---

[3] The order stated: "Any and all documents and/or communications to which a privilege may be claimed or may attach in regard to mediation and settlement negotiations shall be subject to California Evidence Code, §§ 1152 and 1152.5, and any other applicable law."

On September 18, two days after the aborted mediation session, Judge Smith filed the report that is the object of this dispute with the superior court. The report recited that on June 13, 1997, plaintiff's counsel requested that the mediation be continued to a later date to accommodate Stevenson. It was then continued to the September 16-22 dates. On July 16, 1997, the mediator denied as untimely a request by Stevenson for changes to the CMO and for another postponement. On August 15, 1997, Stevenson challenged the mediator pursuant to Code of Civil Procedure section 170.6. The superior court struck the challenge on September 8, 1997, and on September 15, 1997, Stevenson sought a writ of mandate in the Court of Appeal. That court denied Stevenson's request for stay two days later and subsequently summarily denied the petition.

The report of the mediator stated: "Mr. Stevenson has spent the vast majority of his time trying to derail the mediations scheduled for September 16 through 22, 1997. [¶] Mr. Stevenson has refused to make demands on the sub-contractor/cross-defendants who were sued by Bramalea defendants. [¶] On September 16, 1997, Mr. Stevenson arrived 30 minutes late. Even though the purpose of the mediation session was to have Bramalea's expert witnesses interact with plaintiff's experts on construction defect issues, Mr. Stevenson refused to bring his experts to the mediation. Mr. Stevenson stated on several occasions that he did not need experts because of his vast knowledge in the field of construction defect litigation.

"Mr. Stevenson also stated that 'he was not going to dump on the subs' (subcontractors), nor did his client Bramalea have any responsibility for the construction of the project since they did not 'pound any nails or swing any hammers.' [¶] Mr. Stevenson claims to have express indemnity agreements with all the sub-contractors/cross-defendants. If this is correct, no subcontractor can settle with plaintiff without the consent of Bramalea. [¶] Towards the end of the morning of the first mediation session of September 16, 1997, it became apparent that Mr. Stevenson's real agenda was to delay the mediation process so he can file a Motion for Summary Judgment. Mr. Stevenson asserted that he has a valid Statute of Limitations defense to plaintiff's entire claim. Mr. Stevenson wants to open discovery in order to bolster his position. The special master has no idea whether Mr. Stevenson's Statute of Limitation contention is valid. However, it has been the experience of the mediator, in past mediations, that this tactic can be used to cut the amount of plaintiff's claims.

"Mr. Stevenson has had adequate time to file a Motion for Summary Judgment since the case was filed around May 18, 1993.

"As a result of Mr. Stevenson's obstructive bad faith tactics, the remainder of the mediation sessions were canceled at a substantial cost to all parties. . . ."

The mediator's report recommended, inter alia, that Bramalea/Stevenson be ordered to reimburse all parties for expenses incurred as a result of the cancelled September 16-22 mediation sessions.[4]

Bramalea/Stevenson opposed the motion on numerous grounds, advising that a new mediator had been agreed upon, but in claiming that the motion was improper did not assert confidentiality of the mediation sessions as a basis for the opposition. They objected to the declaration of plaintiff's counsel regarding events during the mediation session on grounds of hearsay (§ 1200) and on the basis that the declarant offered no foundation for how he was able to recall the statements exactly. They objected to the content of the report of the mediator, but again did not assert the confidentiality of mediation, instead giving their own version of the events during mediation. The confidentiality provisions of former section 1152.6 (now § 1121; see pp. 10-11, *post*) were not asserted.[5]

The superior court denied this first motion without prejudice, as Bramalea, Ltd., was then in a Canadian bankruptcy proceeding. After one mediation session, the new mediator advised the court that further mediation would not be constructive and recommended that the discovery stay be lifted. Bramalea filed a motion seeking return of mediation fees to be paid to Judge Smith, asserting that the mediator was biased and had done nothing during the mediation process to further the mediation, again describing events during the mediation. A new declaration by Judge Smith was offered in support of an opposition to that motion. This declaration stated that Stevenson had aborted the September 1997 mediation session by refusing to participate in good faith.

Plaintiff filed a new motion for sanctions in May 1998, seeking $30,578.43, based on the same grounds as the first motion and supported by the same declaration of its counsel and the initial report of Judge Smith.

[4]The mediator also recommended that the court grant leave to any aggrieved party to file a motion for sanctions; that Stevenson be ordered to serve written demands for contributions on all subcontractors forthwith; that Bramalea and Stevenson be ordered to have its experts attend mediation sessions if so ordered by the mediator; that a new mediator/special master be appointed as Judge Smith was no longer willing to serve; and that an existing stay of discovery be maintained until a new mediator was appointed. Judge Smith then resigned as of the September 18, 1997, date of his report.

[5]Plaintiff noted the confidentiality guaranteed by section 1152 and former section 1152.5 (repealed by Stats. 1997, ch. 772, § 5), in asserting lack of merit in Bramalea's attempt to assert the work product privilege as justification for failing to produce experts.

In their opposition to this motion Bramalea/Stevenson asserted the same reasons put forth in the original opposition, adding an objection based on section 1121. Bramalea/Stevenson's opposition to this motion objected that "under mediation statutes, which became effective as of the first of this year, this motion and the events that occurred at the mediation which plaintiff is revealing in its moving papers, are not admissible and not a proper basis for seeking and/or imposing sanctions." They also argued that the "act" of Judge Smith was "especially inappropriate in that the Legislature recently enacted Evidence Code, Section 1121, which provides: 'Neither a mediator nor anyone else may submit to a court . . . and a court . . . may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law . . . .' " They also objected on the basis of "section 1115 et seq." to consideration of the statements attributed to Stevenson by plaintiff's attorney.

Plaintiff's second motion for sanctions was granted by the superior court on May 26, 1998. Bramalea/Stevenson filed a timely notice of appeal.

## II

### Court of Appeal

On appeal, Bramalea/Stevenson contended, inter alia, that the superior court violated the confidentiality of mediation when the judge considered the report of the mediator in assessing the events and communications that occurred during the September 1997 mediation in imposing sanctions on them.

The Court of Appeal reversed the sanctions order and remanded the matter to the superior court because that court had not complied with the requirement of Code of Civil Procedure section 128.5, subdivision (c), that the court enter an order that "recite[s] in detail the conduct or circumstances justifying the order." Because the issue was one of great importance whose determination was necessary to a final resolution of the matter, and to give guidance to the superior court as to the matters it could properly consider on remand, the Court of Appeal addressed and rejected appellant's claim that the mediator was barred by section 1121, which prohibits most reports regarding mediation and consideration by the court of such reports, from reporting conduct during mediation to the court.

The Court of Appeal concluded that the rule precluding judicial construction of an unambiguous statute (Code. Civ. Proc., § 1858; *Hughes v. Board*

*of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641]) should not apply here. It invoked instead the rule that permits judicial construction of an apparently unambiguous statute where giving literal meaning to the words of the statute would lead to an absurd result or fail to carry out the manifest purpose of the Legislature. (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1334, fn. 7 [283 Cal.Rptr. 893, 813 P.2d 240].) With regard to the latter, the court acknowledged that the purpose of the confidentiality mandated by section 1119, which makes evidence of anything said during mediation inadmissible and undiscoverable, is to promote mediation as an alternative to judicial proceedings and that confidentiality is essential to mediation. The Court of Appeal reasoned, however, that it should balance against that policy recognition that, unless the parties and their lawyers participate in good faith in mediation, there is little to protect. It concluded that the Legislature did not intend statutory mandated confidentiality to create an immunity from sanctions that would shield parties who disobey valid orders governing the parties' participation. The Court of Appeal also expressed doubt that section 1121 was intended to preclude a report to the trial court if the parties engaged in improper conduct by attacking or threatening to attack an opposing party. In sum, section 1121 was not intended to shield sanctionable conduct.

Relying on the statement of purpose offered by the California Law Revision Commission at the time the section was proposed, the Court of Appeal concluded that section 1121 served to preserve mediator neutrality and prevent coercion of the parties. The Law Revision Commission Comment on Evidence Code section 1121 to which the Court of Appeal referred states in pertinent part: "As Section 1121 recognizes, a mediator should not be able to influence the result of a mediation or adjudication by reporting or threatening to report to the decisionmaker on the merits of the dispute or reasons why mediation failed to resolve it. Similarly, a mediator should not have authority to resolve or decide the mediated dispute and should not have any function for the adjudicating tribunal with regard to the dispute, except as a nondecisionmaking neutral." (Rep. on Chapter 772 of the Statutes of 1997 (Assembly Bill 939), com. on Evid. Code, § 1121, 27 Cal. Law Revision Com. Rep. (1997) 595, 602.)

The Court of Appeal acknowledged that it was creating a nonstatutory exception to the confidentiality requirements. The court described the exception as narrow, permitting a mediator or party to report to the court only information that is reasonably necessary to describe sanctionable conduct and place that conduct in context. The report in this case was not so limited. It included extraneous information, recommendations and conclusions, and it

characterized the conduct and statements reported, all matters for argument by the parties, not a report by a neutral. The Court of Appeal cautioned: "The report should be no more than a strictly neutral account of the conduct and statements being reported along with such other information as required to place those matters in context." The Court of Appeal directed the trial court to disregard any portions of the report or the declarations submitted by the parties that did not conform to this limitation.

Bramalea/Stevenson claim that any exception that permits reporting to the court and sanctioning a party on the basis of a mediator's report of conduct or statements allegedly undertaken in bad faith during mediation violates the statutes that guarantee confidentiality of mediation.[6] And, notwithstanding the limited scope of the exception the Court of Appeal believed it had created, numerous amici curiae with an interest in alternative dispute resolution urge the court to enforce the statutory rule of absolute confidentiality.

### III

### *Discussion*

At the time Judge Smith submitted his September 18, 1997 report to the superior court, former section 1152.6 (Stats. 1995, ch. 576, § 8) provided: "A mediator may not file, and a court may not consider, any declaration or finding of any kind by the mediator, other than a required statement of agreement or nonagreement, unless all parties in the mediation expressly agree otherwise in writing prior to commencement of the mediation. However, this section shall not apply to mediation under Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."

The report was not authorized by former section 1152.6, but, as noted above, no party objected, either before or at the hearing on plaintiff's first motion for sanctions, to the superior court's consideration of the report.[7]

When the motion for sanctions at issue here was heard, former section 1152.6 had been repealed and replaced by section 1121 (Stats. 1997, ch. 772, § 3), which retains and enlarges the substance of former section 1152.6.

---

[6] The parties do not argue that Code of Civil Procedure section 128.5 is inapplicable to conduct during court-ordered mediation. We therefore assume, without deciding, that the court that ordered mediation may impose sanctions under that section based on conduct during the mediation.

[7] Failure to object to admission of evidence of events occurring during a prior mediation has been held to constitute a waiver. (*Regents of University of California v. Sumner* (1996) 42 Cal.App.4th 1209 [50 Cal.Rptr.2d 200].)

Section 1121 provides: "Neither a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation expressly agree otherwise in writing, or orally in accordance with Section 1118."

Section 1119, subdivision (c), enacted at the same time (Stats. 1997, ch. 772, § 3) provides: "All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." Sections 1119 and 1121 became effective on January 1, 1998. (Cal. Const., art. IV, § 8, subd. (c).)

The language of sections 1119 and 1121 is clear and unambiguous, but the Court of Appeal reasoned that the Legislature did not intend these sections to create "an immunity from sanctions, shielding parties to court-ordered mediation who disobey valid orders governing their participation in the mediation process, thereby intentionally thwarting the process to pursue other litigation tactics." The court therefore crafted the exception in dispute here. As stated and as applied, the exception created by the Court of Appeal permits reporting to the court not only that a party or attorney has disobeyed a court order governing the mediation process, but also that the mediator or reporting party believes that a party has done so intentionally with the apparent purpose of derailing the court-ordered mediation and the reasons for that belief.

▮▮▮ Appellants contend that the legislative policies codified in sections 1119 and 1121 are absolute except to the extent that a statutory exception exists. The only such exception they acknowledge is the authority of a mediator to report criminal conduct.[8] They argue that the report of the mediator, which plaintiff submitted to the court with its motion for sanctions

[8]Amici curiae Beverly Hills Bar Association and Ron Kelly, a mediator, suggest that the trial court and Court of Appeal need not have considered Judge Smith to be acting as a mediator when he submitted his report. Had he been classified as a special master ordered to report to the court, his report would not have been subject to the mediation confidentiality statutes and would be governed by the parties' agreement to the CMO provision for reporting. The superior court CMO states: "Judge Peter Smith . . . is appointed as Special Master pursuant to Code of Civil Procedure § 638 et seq., and shall act as mediator for settlement conferences and as discovery referee. The Special Master shall rule on all discovery disputes, shall assist in the implementation of this Order and *shall preside over mediation conferences*

and which the court considered, was a form of testimony by a person made incompetent to testify by section 703.5,[9] and violated the principle that mediators are to assist parties in reaching their own agreement, but ordinarily may not express an opinion on the merits of the case. In permitting consideration of any part of the report, the Court of Appeal has created a vague and inconsistent exception to the mandate of confidentiality, one that the Legislature did not authorize.[10]

Respondent Foxgate Homeowners' Association, Inc., which has elected to rely on the brief it filed in the Court of Appeal (see Cal. Rules of Court, rule 29.3(a)), argues that section 1119 is inapplicable inasmuch as Judge Smith submitted his report to the superior court in 1997, prior to the date on which section 1119 went into effect. Foxgate also argues that section 1152, on which Bramalea/Stevenson rely, is inapplicable as it governs only offers to compromise, and that an exception found in former section 1152.5 did apply. Subdivision (a)(4) of former section 1152.5 (Stats. 1996, ch. 174, § 1, see now § 1122, subd. (a)(1)) created an exception to the confidentiality requirements governing mediation when all of the parties who conducted the mediation or participated in it consented. Foxgate claims that this exception was made applicable by the parties' agreement that Judge Smith was to "have the authority to establish discovery stays, revise discovery stays in place, hear and determine any and all motions seeking to revise the Case

and make any orders governing the attendance of parties and their representatives thereat." (Italics added.)

Amicus curiae Association of Southern California Defense Counsel suggests that Judge Smith acted as though he was conducting a settlement conference and asks this court to clarify the differences between a settlement conference at which a court may, on its own motion, sanction a party for not participating (Code Civ. Proc., § 177.5) and mediation, as does amicus curiae California Dispute Resolution Council. We have no occasion to do so here. It seems clear from the record, and the parties appear to agree, that the proceeding about which Judge Smith reported was a mediation proceeding and the judge was acting as a mediator.

[9]Section 703.5: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement, or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure. However, this section does not apply to a mediator with regard to any mediation under Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."

[10]Appellants also contend that the decision of the Court of Appeal violated the separation of powers doctrine (Cal. Const., art. III, § 3), and that, even if the mediation privilege is disregarded, the trial court abused its discretion in imposing sanctions on them. These claims are not reasonably encompassed within the issues stated in the petition for review on which review was granted and will not be addressed for that reason. (See Cal. Rules of Court, rule 29.2(b).)

Management Order, report his finding to the Court, and make recommendations to the Court." It also contends that the report was exempted from section 1119, barring submission to, or consideration by, the court of a mediator's findings or recommendations, by the introductory clause of that section making its provisions applicable to mediation "[e]xcept as otherwise provided in this chapter," a provision that brings into play the consent exception of section 1121.

Regardless of whether it would have been proper for the court to consider the report of Judge Smith when it was initially transmitted to the court, it was not proper when submitted by plaintiff in support of the second motion for sanctions. We reject Foxgate's assumption that the date on which Judge Smith submitted his report to the superior court is relevant. The motion for sanctions made at that time was denied. At the time Foxgate made its May 1998 motion for sanctions, submitting therewith a copy of that report and a declaration by its attorney about the mediation session in issue, section 1121 was in effect and barred both a mediator from submitting any report like that of Judge Smith and anyone else from submitting a document that revealed communications during mediation and barred the court from considering them. Bramalea objected to consideration of the report and the declaration of Foxgate's attorney, citing sections 1119 and 1121.

Foxgate also argued below that the parties' agreement to the CMO giving the mediator the power to report to the court encompassed the report sent by Judge Smith. The Court of Appeal rejected that argument because the parties had also expressly reserved all mediation privileges. We agree with the Court of Appeal's interpretation of the parties' agreement. Other than a report regarding the success of the mediation or lack thereof and findings related thereto, reports to the trial court concerning the events, communications, and occurrences during the mediation retained their confidential status.

Thus, we consider only the second motion and must determine if the mediation confidentiality statutes then applicable admit of any exceptions.

We do not agree with the Court of Appeal that there is any need for judicial construction of sections 1119 and 1121 or that a judicially crafted exception to the confidentiality of mediation they mandate is necessary either to carry out the purpose for which they were enacted or to avoid an absurd result. The statutes are clear. Section 1119 prohibits any person, mediator and participants alike, from revealing any written or oral communication made during mediation. Section 1121 also prohibits the mediator, but not a party, from advising the court about *conduct* during mediation that

might warrant sanctions. It also prohibits the court from considering a report that includes information not expressly permitted to be included in a mediator's report. The submission to the court, and the court's consideration of, the report of Judge Smith violated sections 1119 and 1121.

Because the language of sections 1119 and 1121 is clear and unambiguous, judicial construction of the statutes is not permitted unless they cannot be applied according to their terms or doing so would lead to absurd results, thereby violating the presumed intent of the Legislature. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539]; *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) Moreover, a judicially crafted exception to the confidentiality mandated by sections 1119 and 1121 is not necessary either to carry out the legislative intent or to avoid an absurd result.

■ The legislative intent underlying the mediation confidentiality provisions of the Evidence Code is clear. The parties and all amici curiae recognize the purpose of confidentiality is to promote "a candid and informal exchange regarding events in the past . . . . This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes." (Nat. Conf. of Comrs. on U. State Laws, U. Mediation Act (May 2001) § 2, Reporter's working notes, ¶ 1; see also Note, *Protecting Confidentiality in Mediation* (1984) 98 Harv. L.Rev. 441, 445. ["Mediation demands . . . that the parties feel free to be frank not only with the mediator but also with each other. . . . Agreement may be impossible if the mediator cannot overcome the parties' wariness about confiding in each other during these sessions."].)

As all parties and amici curiae recognize, confidentiality is essential to effective mediation, a form of alternative dispute resolution encouraged and, in some cases required by, the Legislature. Implementing alternatives to judicial dispute resolution has been a strong legislative policy since at least 1986. In that year the Legislature enacted provisions for dispute resolution programs, including but not limited to mediation, conciliation, and arbitration, as alternatives to formal court proceedings which it found to be "unnecessarily costly, time-consuming, and complex" as contrasted with noncoercive dispute resolution. (Bus. & Prof. Code, §§ 465, 466.) Thereafter, by a 1988 amendment of Evidence Code section 703.5 (Stats. 1988, ch. 281, § 1, p. 977), the Legislature made arbitrators as well as judges incompetent to testify about proceedings over which they presided, and, as noted

above, a 1993 amendment added mediators as persons incompetent to testify. (Stats. 1993, ch. 114, § 1, p. 1194.) In 1993 the Legislature gave further impetus to the policy of encouraging mediation when it enacted Code of Civil Procedure section 1775 et seq. (Stats. 1993, ch. 1261, § 4, p. 7323), which created a mandatory arbitration or mediation pilot project for Los Angeles County. Statements made by parties during mediation were expressly made subject to the confidentiality provisions of the Evidence Code. (Code Civ. Proc., § 1775.10.) The Legislature extended the same confidentiality to statements made during mediation provided for in a recently enacted early mediation pilot program. (Code Civ. Proc., §§ 1730, 1738.)[11]

To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme, which includes sections 703.5, 1119, and 1121, unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception.[12]

Heretofore the only California case upholding admission, over objection, of statements made during mediation in which no statutory exception to confidentiality applied, was *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155 [74 Cal.Rptr.2d 464], a case that is clearly distinguishable. There, a juvenile court judge conducting a jurisdictional hearing in a delinquency matter (Welf. & Inst. Code, § 602) ordered disclosure by a volunteer who had mediated a civil harassment action between the victim and juveniles who had engaged in a rock throwing incident. The minors who were the subject of the hearing claimed that the victim's statements at the mediation session differed from his testimony at the delinquency hearing. The Court of Appeal held that, although a delinquency proceeding is a civil action within the meaning of Evidence Code section 1119 and the confidentiality provisions were applicable, that statutory right must yield to the minor's due process rights to put on a defense and confront, cross-examine, and impeach the victim witness with his prior inconsistent statements. (*Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 51-52 [107 S.Ct. 989, 998-999, 94 L.Ed.2d 40];

[11]Corresponding confidentiality provisions may be found in Business and Professions Code section 6200, subdivision (h) (attorney fee dispute arbitration); Code of Civil Procedure section 1297.371 (conciliation in international commercial disputes); Food and Agricultural Code section 54453, subdivision (b) (agricultural cooperative bargaining associations); Government Code sections 11420.10-11420.30 (administrative adjudication), 12984-12985 (conciliation, etc., in housing discrimination complaint), 66032-66033 (land use mediation); Insurance Code section 10089.80 (earthquake claim mediation); and Labor Code section 65 (labor dispute mediation).

[12]The request of amici curiae that the court take judicial notice of documents they describe as legislative history of Assembly Bill No. 1757 (1993-1994 Reg. Sess.), which added mediations to the testimonial immunity privilege of section 703.5, is granted.

*Davis v. Alaska* (1974) 415 U.S. 308, 315-319 [94 S.Ct. 1105, 1109-1102, 39 L.Ed.2d 347].) To maintain confidentiality to the extent possible, however, the Court of Appeal stated that the juvenile court judge should first have held an in camera hearing to weigh the minors' claim of need to question the mediator against the statutory privilege to determine if the mediator's testimony was sufficiently probative to be necessary. (*Rinaker, supra,* 62 Cal.4th at pp. 169-170.)

Although criticized (see Reuben, *Strictly in Confidence,* Cal. Law. (Sept. 2000) p. 31), *Rinaker* is consistent with our past recognition and that of the United States Supreme Court that due process entitles juveniles to some of the basic constitutional rights accorded adults, including the right to confrontation and cross-examination. (See *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1225 [26 Cal.Rptr.2d 623, 865 P.2d 56], and cases cited.) In this matter, however, plaintiffs have no comparable supervening due-process-based right to use evidence of statements and events at the mediation session.

In the only other reported case arising in California in which a mediator's testimony about events during mediation was compelled and admitted, a federal magistrate judge, Wayne Brazil, an expert in mediation law, ruled that the testimony of a mediator could be compelled notwithstanding sections 703.5 and 1119, which were held to be applicable (Fed. Rules Evid., rule 501, 28 U.S.C.), because the evidence was necessary to establish whether a defaulting party had been competent to enter into a settlement that another party sought to enforce. (*Olam v. Congress Mortg. Co.* (N.D.Cal. 1999) 68 F.Supp.2d 1110.) There the plaintiff had waived confidentiality and the defendant had agreed to a limited waiver of confidentiality, and the agreement in question fell within the exception of section 1123 for settlement agreements resulting from mediation if the agreement provided that it was enforceable. Nonetheless, the magistrate judge was not satisfied that the waivers were an adequate basis on which to compel the mediator's testimony, as the mediator had not waived the mediation privilege. After considering *Rinaker,* in which the magistrate judge noted the mediator had not invoked section 703.5, the magistrate judge concluded that a similar weighing process should be used to determine if the parties' interest in compelling the testimony of the magistrate outweighed the state's interest in maintaining confidentiality of the mediation. After doing so, the magistrate judge concluded that the testimony was the most reliable and probative evidence on the issue, and there was no likely alternative source, the testimony was crucial if the court was to be able to resolve the dispute and was essential to doing justice in the case before him. (*Olam,* at p. 1139.)

That case, too, is distinguishable, as Bramalea/Stevenson have not waived confidentiality.

The mediator and the Court of Appeal here were troubled by what they perceived to be a failure of Bramalea to participate in good faith in the mediation process. Nonetheless, the Legislature has weighed and balanced the policy that promotes effective mediation by requiring confidentiality against a policy that might better encourage good faith participation in the process. Whether a mediator in addition to participants should be allowed to report conduct during mediation that the mediator believes is taken in bad faith and therefore might be sanctionable under Code of Civil Procedure section 128.5, subdivision (a), is a policy question to be resolved by the Legislature. Although a party may report obstructive conduct to the court, none of the confidentiality statutes currently make an exception for reporting bad faith conduct or for imposition of sanctions under that section when doing so would require disclosure of communications or a mediator's assessment of a party's conduct although the Legislature presumably is aware that Code of Civil Procedure section 128.5 permits imposition of sanctions when similar conduct occurs during trial proceedings.[13]

Therefore, we do not agree with the Court of Appeal that the court may fashion an exception for bad faith in mediation because failure to authorize reporting of such conduct during mediation may lead to "an absurd result" or fail to carry out the legislative policy of encouraging mediation. The Legislature has decided that the policy of encouraging mediation by ensuring confidentiality is promoted by avoiding the threat that frank expression of viewpoints by the parties during mediation may subject a participant to a motion for imposition of sanctions by another party or the mediator who might assert that those views constitute a bad faith failure to participate in mediation. Therefore, even were the court free to ignore the plain language of the confidentiality statutes, there is no justification for doing so here.

Plaintiff's motion for sanctions and the trial court's consideration of the motion and attached documents violated both sections 1119 and 1121. The

---

[13]The conflict between the policy of preserving confidentiality of mediation in order to encourage resolution of disputes and the interest of the state in enforcing professional responsibility to protect the integrity of the judiciary and to protect the public against incompetent and/or unscrupulous attorneys has not gone unrecognized. (See Kentra, *Hear No Evil, See No Evil, Speak No Evil: The Intolerable Conflict for Attorney-Mediators Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct* (1997) BYU L.Rev. 715; Irvine, *Serving Two Masters: The Obligation under the Rules of Professional Conduct to Report Attorney Misconduct in a Confidential Mediation* (1994) 26 Rutgers L.J. 155.) As noted, however, any resolution of the competing policies is a matter for legislative, not judicial, action.

motion had attached both the report of Judge Smith and a declaration by plaintiff's counsel reciting statements made during the mediation session. Section 1121 prohibits the submission by anyone to a court and consideration by the court of "any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator." Plaintiff violated this section, as did the court. Plaintiff also violated subdivision (c) of section 1119 in counsel's declaration and by submitting the report. Both documents included communications in the course of the mediation.[14] The court violated subdivision (a) of section 1119 when it admitted in evidence at the sanctions hearing "anything said . . . in the course of . . . mediation."

The remedy for violation of the confidentiality of mediation is that stated in section 1128: "Any reference to a mediation during any subsequent trial is an irregularity in the proceedings of the trial for purposes of Section 657 of the Code of Civil Procedure. Any reference to a mediation during any other subsequent noncriminal proceeding is grounds for vacating or modifying the decision in that proceeding, in whole or in part, and granting a new or further hearing on all or part of the issues, if the reference materially affected the substantial rights of the party requesting relief."[15]

Inasmuch as the superior court's sole basis for imposing sanctions on Bramalea/Stevenson was allegations in and the material offered in support of the motion for sanctions,[16] it is clear that reference to the mediation materially affected their rights and that the Court of Appeal did not err in setting aside the order imposing sanctions. If, on remand, plaintiff elects to pursue the motion, the trial court may consider only plaintiff's assertion and evidence offered in support of the assertion that Bramalea engaged in conduct that warrants sanctions. No evidence of communications made during the mediation may be admitted or considered.

[14]To the extent that the declaration of counsel stated that the mediator had ordered the parties to be present with their experts, there was no violation. As noted earlier, neither section 1119 nor section 1121 prohibits a party from revealing or reporting to the court about noncommunicative conduct, including violation of the orders of a mediator or the court during mediation.

[15]See also Code of Civil Procedure section 1775.12: "Any reference to the mediation or the statement of nonagreement filed pursuant to Section 1775.9 during any subsequent trial shall constitute an irregularity in the proceedings of the trial for the purposes of Section 657."

[16]The superior court stated at the hearing on the second sanctions motion: "It appears to me that the breakdown in the first arbitration-mediation attempts are directly tied to the nonattendance of the experts of the defendants and the factual basis as alleged by the moving party."

## IV

### *Disposition*

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.